BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

BRIAN R. FAERSTEIN (CABN 274850)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6473
    Fax: (415) 436-7234
    brian.faerstein@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR 16-00044 WHA |
| | ) |
| Plaintiff, | ) GOVERNMENT'S SENTENCING |
| | ) MEMORANDUM |
| v. | ) |
| | ) Date:  October 4, 2016 |
| LEONARD NATHANIEL HEATH, | ) Time:  2:00 p.m. |
| | ) |
| Defendant. | ) Hon. William Alsup |
| | ) |

## I.      INTRODUCTION

The United States respectfully requests that the Court accept the plea agreement submitted by the parties under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.  On October 4, 2016, the defendant, Leonard Nathaniel Heath, will stand before the Court to be sentenced following his plea to the sole count of the Indictment, charging him with armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d).  The defendant pled guilty on July 12, 2016, and he has been in continuous federal custody since January 22, 2016.

The parties have agreed that the proper disposition in this case is 188 months' imprisonment, five years of supervised release, a $100 special assessment, forfeiture and restitution.  Probation agrees with

1 the parties' proposed disposition.[1]  The government believes this sentence is sufficient, but not greater
2 than necessary, to achieve the sentencing goals of 18 U.S.C. § 3553(a).

3 **II.     OFFENSE CONDUCT**

4        On January 20, 2016, the defendant robbed at gunpoint a branch of Wells Fargo Bank ("WFB")
5 in the Inner Sunset neighborhood of San Francisco.  Presentence Investigation Report ("PSR") at ¶ 6.
6 The bank robbery was captured from multiple angles on video surveillance maintained by the bank.  *Id.*
7 Specifically, during the lunch hour, the defendant entered the bank armed with a pistol and, upon being
8 greeted by a bank employee, stuck the pistol in the employee's back, directing him to one of the teller
9 counters at the bank.  *Id.*  During the course of the robbery, the defendant threatened at least three other
10 bank employees with the pistol and stole at least $11,196 from two separate teller windows.  *Id.*  The
11 defendant also stole $7,500 directly from a customer, who had put that sum of money on a teller counter,
12 waiting to make a deposit.  *Id.*  In addition to the pistol, the defendant threatened the use of force and
13 violence, intimidating the employees by repeatedly and aggressively demanding more money and
14 threatening to shoot them.  *Id.*  The defendant then fled the bank with at least $18,696 in cash.  *Id.*

15        At least one of the WFB employees has submitted a Victim Impact Statement describing the
16 psychological and emotional toll this crime has taken on him.  *Id.* at ¶ 9.  The employee described his
17 inability to sleep for days following the bank robbery, his decision to switch to another branch as a result
18 of the robbery, and his general anger, fears and anxieties following the incident.  *Id.*

19        At the time he committed this bank robbery, the defendant was completing a 151-month
20 custodial sentence for another bank robbery, arising out of a 2005 federal conviction in Ohio.  *Id.* at ¶ 7.
21 In particular, he was under the custody of the United States Bureau of Prisons and residing at the GEO
22 Care Residential Reentry Center ("RRC"), a halfway house in the Tenderloin neighborhood of San
23 Francisco.  *Id.*  On January 22, 2016, two days after the robbery in the Inner Sunset, the defendant was
24 arrested by the Federal Bureau of Investigation at the RRC, where agents seized, among other things,
25 $3,060 in cash from the defendant's room.  *Id.*

26

27        [1] Probation's sentencing recommendation does not include the parties' agreement with respect to
28 forfeiture.  As discussed further herein, the government no longer believes forfeiture is necessary in this
case so long as full restitution is ordered by the Court.

III.    **GUIDELINES CALCULATIONS**

The government agrees with Probation that the Career Offender guideline under section 4B1.1 of the Sentencing Guidelines applies to the defendant's offense conduct in this case, as agreed upon by the parties in the Plea Agreement.  The defendant was 49 years old at the time of the instant offense; he has sustained at least two prior convictions of crimes of violence, to wit, two federal bank robbery convictions in 1993 and 2005, respectively, PSR at ¶¶ 23, 35-36; and the instant offense is similarly a crime of violence.  U.S.S.G. § 4B1.1(a).  The statutory maximum for a violation of 18 U.S.C. §§ 2113(a) and (d) is 25 years; accordingly, the offense level under U.S.S.G. § 4B1.1(b)(2) is 34.  Because this offense level is higher than the offense level that would be calculated under the conventional guideline for bank robbery (U.S.S.G. § 2B3.1) under the facts of this case, the Career Offender guideline applies.[2] U.S.S.G. § 4B1.1(b); *see also* PSR at ¶¶ 16-26.  With respect to acceptance of responsibility, the government agrees that a three-level decrease is appropriate for the defendant timely notifying the government of his intention to enter a plea of guilty.

The parties agree that the defendant falls within Criminal History Category VI pursuant to § 4B1.1(b) of the Career Offender guideline, and Probation concurs in this calculation.  PSR at ¶ 40.

IV.    **PLEA AGREEMENT**

In the Plea Agreement, the parties agree that a reasonable and appropriate disposition of this case under the Sentencing Guidelines and 18 U.S.C. § 3553(a) is 188 months' imprisonment, five years of

---

[2]  The government notes, only for purposes of preservation, an objection to the PSR's calculations under § 2B3.1 with respect to the 5-level enhancement for "brandish[ing] or possess[ing]" a firearm under § 2B3.1(b)(2)(C).  PSR at ¶ 18.  The government believes that a 6-level enhancement for "otherwise us[ing]" a firearm under § 2B3.1(b)(2)(B) is more appropriate.  Application Note 1(I) to § 1B1.1 provides that "otherwise used" means "the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon."  Application Note 1(C) to § 1B1.1 provides that "brandished" means that "all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, in order to intimidate that person, regardless of whether the weapon was directly visible to that person."  Here, in light of the defendant's pressing his pistol into the back of one of the bank employees and directing him through the force of the pistol to one of the teller counters, the government believes the 6-level enhancement is appropriate.  *See, e.g.*, *United States v. Fuller*, 99 F.3d 926, 927 (9th Cir. 1996) (affirming application of 6-level enhancement under § 2B3.1(b)(2)(B) where defendant "pressed the gun to the head of a teller" and thus "did more than wave or display the gun in a threatening manner").  However, because this one-level upward enhancement would still yield a total offense level of only 28 under § 2B3.1, which is lower than the offense level of 34 under § 4B1.1(b)(2), the Career Offender guideline would still apply in lieu of § 2B3.1.

supervised release, a $100 special assessment, forfeiture, and restitution.  In addition to the supervised

release conditions fixed by the Court, the parties agree that the defendant should be subject to the

following search condition:

> Special Condition (Searches)
> The defendant shall submit his person, residence, office, vehicle,
> electronic devices and their data (including cell phones, computers, and
> electronic storage media), and any property under defendant's control to a
> search.  Such a search shall be conducted by a United States Probation
> Officer or any federal, state, or local law enforcement officer at any time,
> with or without suspicion.  Failure to submit to such a search may be
> grounds for revocation; the defendant shall warn any residents that the
> premises may be subject to searches.

## V.   SECTION 3553(a) FACTORS

"The overarching statutory charge for a district court is to impose a sentence sufficient, but not

greater than necessary" to achieve the goals of section 3553(a).  *United States v. Carty*, 520 F.3d 984,

991 (9th Cir. 2008) (internal quotations omitted).  In sentencing the defendant, this Court must consider

all of the directives set forth in Title 18, United States Code, Section 3553(a).  *See United States v.

Booker*, 543 U.S. 220 (2005).  To start, the Court must consider the correctly calculated Guidelines

range.  *Id*.  However, the Court may not presume that a sentence within the Guidelines range is

reasonable because the Guidelines are one among the several Section 3553(a) factors that courts are

directed to consider in arriving at an appropriate sentence.  *Id*.  The key factors include the nature and

circumstances of the offense and the history and characteristics of the defendant, and the goals of

sentencing, including reflecting the seriousness of the offense, promoting respect for the law, providing

just punishment, affording adequate deterrence to criminal conduct, and protecting the public from

further crimes by the defendant.  18 U.S.C. § 3553(a).

### A.   Term of Custody

The government believes that the agreed-upon sentence of 188 months' imprisonment is

sufficient, but not greater than necessary, to achieve the goals of section 3553(a).

With respect to the nature and circumstances of the instant offense of armed bank robbery, the

defendant's conduct in this case was extremely dangerous and put numerous bank employees and

customers at risk and in fear for their lives.  The defendant entered a bank during the middle of the day

with a pistol, stuck the firearm in the back of one employee, and pointed it at several others while

1  aggressively demanding money and threatening to shoot if his commands were not met.  PSR at ¶ 6.

2  The defendant threatened and stole money from two separate tellers and the bank's manager as well as a

3  customer who was in the midst of depositing money with the bank.  *Id.*  Not only did the defendant's use

4  of a pistol create fear and apprehension in the victims of the robbery, but also it greatly increased the

5  risk that the incident could have been significantly escalated with gunfire and casualties in the event law

6  enforcement was able to respond at the time of the robbery.[3]  The term of custody in this case should

7  reflect the seriousness of this offense and provide just punishment in light of the fear the defendant

8  instilled in the victims of his crime.  18 U.S.C. § 3553(a)(2)(A).

9          The defendant's criminal history further demonstrates that his commission of the instant offense

10  was not an isolated incident but rather the latest episode in a consistent pattern of bank robberies and

11  other serious felony offenses.  The defendant committed the armed bank robbery in this case in January

12  2016 while residing at a halfway house under BOP custody as part of a 151-month term of custody he

13  sustained for a federal bank robbery conviction in 2005.  PSR at ¶ 36.  That prior conviction arose out of

14  a December 2004 bank robbery where the defendant presented a note threatening a gun.  *Id.*  The

15  defendant was then on supervised release for yet another federal bank robbery conviction and 108-

16  month term of custody he sustained in April 1993 arising out of four separate bank robberies the

17  defendant committed between October and November 1992.  *Id.* at ¶ 35.  During those robberies, the

18  defendant similarly presented demand notes threatening the use of force or a firearm.  *Id.*  Prior to his

19  three federal bank robbery convictions, the defendant sustained at least six other adult convictions

20  between 1984 and 1989, including two felony robbery convictions and aggravated arson.  *Id.* at ¶¶ 29-

21  34.  These convictions are in addition to at least six other arrests of the defendant for felony offenses.

22  *Id.* at ¶¶ 41-47.

23

24 _____

    [3] During the change of plea colloquy in this case, the defendant claimed that the pistol he used

25  during the bank robbery was a toy gun.  However, even assuming this to be true *arguendo* – and the
    government knows of no evidence to support such an assertion – the fact remains that by pointing a

26  purported replica pistol at numerous individuals and threatening to shoot them, the defendant's use of
    such an instrument nonetheless constituted a dangerous weapon for purposes of 18 U.S.C. §§ 2113(a)

27  and (d).  *See United States v. Martinez-Jimenez*, 864 F.2d 664, 667-668 (9th Cir. 1989) (holding that use
    of toy replica of firearm qualifies as a "dangerous weapon" under federal armed bank robbery statute

28  because, among other things, it "created fear and apprehension in the victims" and increased the
    potential for "gunfire and casualties").

1    In short, the defendant's criminal history reflects an individual that has continued to engage in

2    the same patterns of conduct and who has not learned from his past mistakes.  A significant term of

3    custody is thus necessary to promote respect for the law, afford adequate deterrence to criminal conduct

4    and protect the public from further crimes of the defendant.  18 U.S.C. § 3553(a)(2)(A)-(C).

5    The government recognizes, however, the defendant suffers from several physical ailments and

6    mental health conditions as described in the PSR, although a number of those conditions may have been,

7    in whole or in part, of the defendant's own making due to his extensive substance abuse history.  *See*

8    *generally* PSR at ¶¶ 53-61.  At 50-years-old, the defendant's willingness to accept responsibility in this

9    case and seek mental health treatment would appear to mitigate in his favor in considering the

10   appropriate term of custody in light of the applicable advisory Guidelines range.  With a low-end term of

11   188 months, the defendant would remain in federal custody into his mid-sixties before transitioning into

12   the requested five years of supervised release.  And such a term of imprisonment would be a

13   proportionate increase to his prior two sentences for federal bank robbery (108 months and 151 months,

14   respectively).

15   Accordingly, the government believes a custodial term of 188 months – the low-end of the

16   advisory Guidelines range – is a reasonable and appropriate sentence in this case.  Such a term of

17   custody is sufficient but not greater than necessary to achieve the sentencing goals of section 3553(a).

18   **B.    Supervised Release**

19   The parties and Probation agree that a term of five years of supervised release is appropriate

20   following the defendant's release from federal custody.  The government agrees with Probation's

21   recommended conditions governing the defendant's supervised release.

22   However, the government objects to Probation's omission of the special search condition to

23   which the parties agreed in the Plea Agreement, as set forth in Section IV above.  The government

24   respectfully requests that the Court include this additional condition as part of the terms of supervised

25   release in the Court's judgment.

26   **C.    Forfeiture and Restitution**

27   The government agrees with Probation that the defendant should be ordered to pay restitution in

28   the total amount of $18,696, which includes: (i) $11,196 to Wells Fargo Bank; and (ii) $7,500 to the

WFB customer whose name and address are identified in Probation's sentencing recommendation.

The government notes that the Indictment in this case alleged criminal forfeiture including $3,060 in U.S. currency that was seized from the defendant at the time of his arrest and a money judgment equivalent to the sum in aggregate of the proceeds obtained, directly or indirectly, as a result of the defendant's crime. The parties agreed to the defendant's forfeiture of these amounts in paragraph 12 of the Plea Agreement. The government, however, will not request an order of forfeiture from the Court at sentencing but will instead apply the seized $3,600 directly to the anticipated restitution order of $18,696.

## VI.    CONCLUSION

In full consideration of the 3553(a) factors and the goals of sentencing, the government respectfully requests that the Court accept the Plea Agreement of the parties and sentence the defendant to a 188-month term of imprisonment, five years of supervised release, a $100 special assessment, and restitution.

Dated:   September 27, 2016                              Respectfully submitted,

                                                        BRIAN J. STRETCH
                                                        United States Attorney

                                                        By:  */s/ Brian Faerstein*
                                                              BRIAN R. FAERSTEIN
                                                              Assistant United States Attorney